## WILLIAM H. BREZEE v. WILLIAM T. POWERS.

*Negligence—Duty of land-owner to one invited upon his premises—*
*—Contributory negligence—Question for jury.*

1. " When one, expressly or by implication, invites others to come
   upon his premises, whether for business or for any other pur-
   pose, it is his duty to be reasonably sure that he is not invit-
   ing them into danger, and to that end he must exercise ordi-
   nary care and prudence to render the premises reasonably safe
   for the visit." Cooley, Torts, 605.

2. The question of negligence is usually one for the jury to deter-
   mine under all of the circumstances of the case; but where the
   negligence of a defendant is shown by undisputed evidence, it
   is purely a question of law, to be determined by the court.
   So *held*, where the owner of an opera-house, fronting on a
   public street, provided side entrances opening on a private
   alley, which was used by the public as a common way with his
   permission, and only protected them from falling into an area,
   opening into a cellar belonging to said building, by an iron rail-
   ing so low as to come below the knee of a man of ordinary
   height; and it is held that he was guilty of negligence.

3. Where the essential fact in a case is whether contributory neg-
   ligence did or did not exist, and this depends upon inferences
   to be drawn from facts and circumstances about which honest,
   intelligent, and impartial men might differ, such a case should
   be submitted to the jury. *Lowell . v. Watertown Township*, 58
   Mich. 568; *Carver v. Plank-road Co.*, 61 Id. 584; *Harris v.*
   *Township of Clinton*, 64 Id. 447; *Little v. Street Railway Co.*,
   78 Id. 205.

Error to superior court of Grand Rapids. (Burlingame,
J.) Argued February 18 and 19, 1890. Decided April
11, 1890.

Negligence case. Defendant brings error. Affirmed.
The facts are stated in the opinion.

*Birney Hoyt* (*John A. Fairfield*, of counsel), for appel-
lant.

*Turner, Carroll & Preston,* for plaintiff.

[The points of counsel are stated in the opinion.—
REPORTER.]

LONG, J. The third count of the declaration states
the plaintiff's cause of action as follows:

"And whereas, also, the said defendant, before and on
March 19, A. D. 1888, was the possessor and owner of
certain other premises, with the appurtenances, situate in
the city of Grand Rapids, in the county aforesaid, upon
which said premises the said defendant owned and pos-
sessed a building which was occupied and used for
various business purposes, a portion of said building
being used as a theatre.

"And whereas, there now is, and before and on the
same day and year aforesaid there were, several separate
public entrances and exits to said building on the east
side thereof, situate upon the premises aforesaid, and
there now is, and before and on the same day and year
aforesaid there was, a sidewalk built on said premises
upon the east side of said building for all persons to
pass and repass at their free will and pleasure into and
from said building, as well as for all persons to pass and
repass at their free will and pleasure from Pearl street
to Lyon street, in the city of Grand Rapids, in the
county aforesaid, and which had for a long time there-
tofore been used by the public as aforesaid, and which
said user was upon the invitation of the said defendant,
and with his full knowledge and consent.

"And plaintiff further avers that there now is, and
before and on the same day and year aforesaid there
was, a certain area or hole opening into a certain cellar
or vault of, and belonging to, said building and premises
of the defendant, which said area or hole opening into
said cellar or vault as aforesaid was situate on said
premises upon the east side of said building, and between
said building and said sidewalk so built along the east
side of said building, as aforesaid.

"Yet the said defendant, well knowing the premises,
while he was so the possessor and owner of the said
building and premises with the appurtenances, and while
there was such area or hole as aforesaid, to wit, on the

day and year aforesaid, wrongfully and negligently permitted the said area or hole to be and continue, and the same was then and there, so negligently, insufficiently, and defectively guarded that by means of the premises, and for want of proper and sufficient guards to the said area or hole, the said plaintiff, who was then and there passing along said sidewalk on said premises, situate along the east side of said building as aforesaid, with reasonable and due care, and without negligence on his part, accidentally and unavoidably fell into said area or hole, by means whereof the said plaintiff then and there became and was greatly hurt, cut, bruised, and wounded," etc.

There does not appear to be much contention over the facts in the case as to the situation or surroundings of the premises, and the manner in which the plaintiff was injured.

The evidence shows that the defendant was the owner of the premises which were situate on the north side of and facing Pearl street, upon which, in 1873 and 1874, he constructed a block known as the "Powers Opera-house Block," which contained an opera-house in the upper stories, and stores upon the ground floor. These stores fronted upon Pearl street, and also to the east on this alley. The stores fronting on the alley were fitted up with entrances and store fronts on the alley, and a sidewalk was constructed from Pearl street northward to the north end of the opera-house building, and has since been kept and maintained there. North of defendant's building, and in rear of it, Mr. Idema erected a building used for offices, facing Lyon street, and put a walk along on the east of that, coming within some 19 feet of the defendant's walk; and the public have for many years used this walk in going from Pearl to Lyon streets, and for entering the stores and other places fronting on the alley, and to reach the offices and the opera-house entrance on the east side. In 1883 or 1884 the defendant

lowered the opera-house, doing away with the stores fronting this alley, and cut off the back end of the stores facing on Pearl street by constructing a transverse lobby running east and west through the building, to an entrance opening into this alley. The main entrance to the opera-house was, however, from Pearl street. On the west side of the opera-house building is what is called an "arcade," and from which were also doors for ingress and egress to the opera-house. In 1887, it appears, the theatre was leased to Mr. Berger, who for a time closed the doors opening from the alley.

On the night of the injury the plaintiff was employed as state editor of the Telegram-Herald newspaper, and left his place of business on Pearl street, west of the opera-house, about 8 o'clock, to attend a rehearsal in the opera-house to which he had been invited by his son. The opera-house was not open on that night to the general public. Plaintiff testified that he passed the main entrance on Pearl street, but the doors were not open. He did not try them to see if they were fastened, but went to the alley to go in at the side entrance, through which he had always been accustomed to enter, not knowing that the doors there had been closed. After entering the alley, he commenced to unbutton his pants for the purpose of urinating, and walking along at the same time, when his legs struck this railing, and he fell into the area, which was uncovered, and only guarded by this railing, some 19 inches in height, and made of gas-pipe. There is no contention in the case about the ownership of the premises, and but little, if any, dispute about the situation and surroundings thereon that night.

The plaintiff on the trial in the court below claimed, and that claim is insisted upon here, that when one builds a sidewalk accessible to the public it constitutes an invitation to the public to use it, and it becomes the duty of

such party to guard the public from injury in their use of it, if they exercise ordinary care in going over it. No claim is made by this count in the declaration, and none is made by plaintiff in his brief, that the walk in question here was a public way by dedication, use, or prescription, but that the public used it constantly to the knowledge of defendant, and in great numbers, to pass to and from Pearl street to Lyon street and return, and to pass into the building of defendant and the Idema block.

Upon this branch of the case the court instructed the jury, as requested by plaintiff, as follows:

"If the jury find from the evidence that the defendant in this case built a sidewalk on the east side of his opera-house, and the same was used by the public whenever they had occasion to visit his premises or to pass the same, and find, further, that the plaintiff in this case intended to visit the opera-house on the night of the accident, and was passing along the sidewalk for that purpose, when he met with the accident, the defendant cannot set up as a defense to this action that the property in question is private property, and that the plaintiff was a trespasser thereon."

The court further instructed the jury:

"When a land-owner, expressly or by implication, invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit. Where the owner of land, expressly or by implication, invites others to come upon his land, if he permit anything in the nature of a snare to exist thereon which results in injury to one availing himself of the invitation, and who at the same time is exercising ordinary care, such owner is answerable for the consequence."

The defendant contends that these instructions were erroneous:

"1. Because the railing about the area was reasonably

safe, being a heavy iron railing upon iron posts, and sufficiently high to guard the area, as against any persons passing that way who exercised ordinary care in walking.

"2. Because this open space where the area is situated is not a public way, but the private property of the defendant.

"3. That the language of the court in characterizing this place as a snare was unjustifiable, as applied to the facts in the case."

We will dispose of these questions before proceeding to the main point relied upon by defendant's counsel,—that is, that the plaintiff was guilty of contributory negligence.

Under the undisputed facts appearing upon this record, the public, to the knowledge of the defendant, used this as a common way, and the defendant permitted such use. It appears also, without contradiction, that the defendant, in placing the doors entering the opera-house upon the east side, and placing the walk leading from Pearl street to this entrance, by implication invited the public to go over and upon it to that entrance. It was therefore his duty to make it reasonably safe for all persons passing and repassing. The rule laid down in Cooley on Torts, 605, is as follows:

"It has been stated on a preceding page that one is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he, expressly or by implication, invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

This rule is the doctrine of all the courts, and I know of no rule to the contrary. *Cross v. Railway Co.,* 69 Mich. 368 (37 N. W. Rep. 363); *Bennett v. Railroad Co.,* 102 U. S. 577; *Sweeny v. Railroad Co.,* 10 Allen, 368; *Crogan v. Schiele,* 53 Conn. 186 (1 Atl. Rep. 899);

*Association v. Giles,* 33 N. J. Law, 260; *Railroad Co. v. Boteler,* 38 Md. 568; *Buesching v. Gas-light Co.,* 73 Mo. 219; *Samuelson v. Mining Co.,* 49 Mich. 170 (13 N. W. Rep. 501).

I am satisfied that the court was not out of the way in characterizing it as a snare. The question of negligence is usually one for the jury to determine, under all of the circumstances of the case; but where the question is based upon undisputed evidence, and where the negligence is so made manifest, it is purely a question of law, and to be determined by the court. Under the circumstances surrounding this case, appearing from undisputed evidence, the court would not have been in error in advising the jury that defendant was guilty of negligence in leaving this area there unguarded except by a rail 19 inches in height. It seems to me that reasonable men could not disagree that such a hole in the sidewalk, if left entirely unguarded, would be dangerous to passers-by, and that a railing placed around it, coming below the knee of a man of ordinary height, would operate as a snare, as one striking against it, going at an ordinary pace, would inevitably be pitched into the hole.

It appears from the defendant's own testimony that, after the opera-house was lowered, the east doors were kept for places of exit, in case of accident in the opera-house building. These doors opened out upon this walk, and only a little north of the area where the accident occurred. It needs no stretch of imagination to see the result of some accident or panic in the opera-house. If these doors were thrown open to the mass of excited people rushing out, they would reach the sidewalk through this eastern exit, only to be thrown into this pitfall. They would have fled from some apparent or apprehended danger inside, only to meet as great a one

outside; nor would they remember the area, or that it was only guarded by a railing 19 inches high; and yet, in the face of such possible dangers, defendant not only made this exit, but kept and maintained this pitfall. This was not the only danger. People passing in the darkness of night from Pearl to Lyon street, in the exercise of ordinary care, being struck below the knee by this rail, would inevitably be thrown into the hole, and nothing could save their fall.

The first two assignments of error relate to the refusal of the court to strike out the testimony of one of plaintiff's witnesses. We have examined the record, and think the testimony competent, and shall not discuss the question.

The third and fourth assignments of error relate to the ruling of the court in refusing to direct a verdict for the defendant. The court was not in error in so ruling.

The fifth to the thirty-fourth assignments of error, inclusive, relate to the ruling of the court in refusing to give the defendant's 30 requests to charge to the jury. I have carefully read these requests to charge and the charge as given, and am satisfied that such of the requests as the defendant was entitled to have given are fully covered by the charge, and that the others were very properly refused. Some of these requests, however, cover the subject of the plaintiff's contributory negligence, which I shall discuss in connection with the general charge of the court. The defendant asked the court to instruct the jury:

"In this case the plaintiff himself testifies that it was light enough where he fell, and just before he fell, so that he could see the sidewalk, and that he had been through the same passage-way a great many times, both night and day. Under these circumstances, the plaintiff is chargeable with knowledge of the alleged dangerous place, and should have kept the plank walk, and, not

having done so, he was guilty of contributory negligence."

The court refused this request, and left the question of plaintiff's contributory negligence as a question of fact for the jury, charging them as follows:

" If you find from the facts in this case that plaintiff was there by such invitation, and fell down the area, then, before you can find against the defendant, you must find that the area was not properly guarded; that the plaintiff was not familiar with the dangerous character of the place, or, if familiar with it, that he was exercising a reasonable degree of care in order to avoid it. It will not be sufficient for him, being familiar with the danger, to have heedlessly strolled through there, and unthinkingly fallen in, for under such circumstances he cannot recover.

" If the plaintiff was familiar with the danger, and it was light enough to plainly discern the way, and he carelessly fell in, he cannot recover. If he was familiar with the locality and the danger, and it was dark, then his duty was to have exercised greater care and precaution as the darkness increased in density."

" If from the evidence you should find that the plaintiff knew of the danger, and through mistake, inadvertence, or forgetfulness fell therein, then it matters not whether it was properly guarded or not; he would be guilty of contributory negligence, and could not recover.

" If from the evidence you find that the area was not sufficiently guarded, and that the defendant was careless, and even negligent, in his duty, if you further find that the accident would not have occurred if the plaintiff had exercised reasonable care, then the plaintiff cannot recover."

The defendant also asked the court to instruct the jury that the plaintiff, according to his own testimony, after having turned into the alleged alley, having commenced to unfasten his pants for the purpose of urinating, and at the same time continuing to walk along, and not paying attention to the walk or to the railing of the area, but paying attention to the unfastening of his pants for the purpose of urinating in the alley at the time he fell

over the railing, is guilty of contributory negligence, and cannot recover; and, further, that the defendant owed plaintiff no duty to provide a place for plaintiff to urinate, and that it was not proper or lawful for the plaintiff to urinate in the so-called alley, on the premises of defendant.

The court refused these requests in the form asked, but instructed the jury upon the subjects as follows:

"If this passage-way was arranged with a sidewalk for the purpose of accommodating people who desired to enter the back part of the opera-house, whether the opera-house or the stores and saloons, or to accommodate passers through from street to street, then it was an invitation for such persons to enter, and the question of plaintiff's attempt to urinate while in there has no bearing upon the defendant's liability, except as it tends to show that plaintiff's attention was thereby diverted from the danger, and he in consequence thereof received the injury; in which case he could not recover.    *    *    *

"If the plaintiff knew or did not know of the condition of this area, and in the night-time was walking through this alley, and instead of paying attention to where he was going was paying attention to his physical necessities, and while his mind was so diverted from his way he fell into the area, then, in that case, he cannot recover.    *    *    *    *    *    *    *    *    *

"In short, in order for the plaintiff to recover, he must have been there by what amounts to an invitation, as before directed, and must show by competent proof that he went into the alley not knowing of the dangerous area, and fell in while exercising such care as a prudent man would exercise in passing the area, and that, on account of the negligence of the defendant alone in not providing sufficient guard, plaintiff was injured, the plaintiff in no way contributing to such injury."

The court could have gone no further in its charge to guard the rights of the defendant without instructing the jury in plain terms that the plaintiff was negligent, and for that reason he could not recover.

It is not necessary to state the testimony given by the plaintiff and his witnesses as to the manner of the accident. It did appear that the plaintiff for some time worked in the printing-office which was then in the Metropolitan block, on the east side of the alley, and from the windows of which one could look down upon the alley, and that the plaintiff had many times passed along this sidewalk to Lyon street, and also to go into the opera-house on the east side. The plaintiff also testified that on that evening he could see the sidewalk, though it was quite dark, and that in going along on the sidewalk he was unbuttoning. his pants. Defendant's counsel insist that, under these circumstances, it was the duty of the court to instruct the jury that the plaintiff was guilty of contributory negligence, and therefore could not recover.

We are not satisfied that the case is so clear that it became the duty of the court to give such instruction. Questions of negligence are usually for the jury to determine, under all the circumstances; and to warrant the court in determining, as a matter of law, that these facts and circumstances show contributory negligence, they must be so conclusive that reasonable and prudent men would not disagree. If from the facts and circumstances the negligence is manifest, then, as I have before stated, it is a matter to be disposed of by the court as a matter of law. Where the essential fact in a case is whether contributory negligence did or did not exist, and this depends upon inferences to be drawn from facts and circumstances about which honest, intelligent, and impartial men might differ, such a case should be submitted to the jury. *Swoboda v. Ward,* 40 Mich. 424; *Conely v. McDonald,* Id. 150; *Railway Co. v. Slattery,* 39 Law T. (N. S.) 365 Here the case was submitted to 12 men. They

had heard the testimony of the plaintiff, and all the other witnesses, as to the manner in which the accident occurred, just how the plaintiff walked in there that night, what he was doing, and they knew the whole surroundings. They had visited the premises, and had all the evidence to guide them. They received instructions from the court in a very full and fair charge, putting the question to them in all its phases, and only stopping short of a positive direction to find for the defendant; and yet they have found that the plaintiff exercised due care in passing along the alley there that night. It was manifestly a question of fact for the jury.

In the case of *Lowell v. Watertown Tp.*, 58 Mich. 568, the testimony showed that plaintiff was injured by stepping into a hole in the highway. It was a dark night, but he knew of the hole, and was thinking about it. Counsel claimed that his knowledge of the defect, and his having it in his mind at the time, was conclusive evidence of his want of ordinary care. It was held a proper question for the determination of the jury. This rule has been adhered to in the following cases: *Harris v. Township of Clinton*, 64 Mich. 447 (31 N. W. Rep. 425); *Carver v. Plank-road Co.*, 61 Id. 584 (28 N. W. Rep. 721); *Dundas v. City of Lansing*, 75 Id. 499 (42 N. W. Rep. 1011). The court was not in error in refusing the defendant's request upon the question of furnishing the plaintiff a safe place to urinate, or that he was negligent in attempting to urinate upon the private grounds of the defendant. The instructions given by the court in its general charge heretofore set out gave all that the defendant was entitled to.

Some question is raised about the admissions made by plaintiff after the injury. The court gave instructions

to the jury upon that part of the case, and we think stated the law of the case.[1]

The case has been very fully and fairly tried by able counsel, and all the material questions of fact found by the jury, under a correct interpretation of the law from the court, and the judgment must be affirmed, with costs.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred.

———————

[1] "Parol proof of verbal admissions of a party to a suit, if understandingly made, often afford satisfactory evidence; but it frequently happens that the witness may not have understood him, or unintentionally altered a few of the expressions, which may give an effect to the alleged statements completely at variance with what the party did actually say. It is the province of the jury to give to such evidence such weight as it is fairly entitled to, in view of all of the evidence in the case."