## BARKER *v.* CITY OF KALAMAZOO.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—DEFECTS
   —PERSONAL INJURIES—NEGLIGENCE—LIABILITY OF CITY.
   Where a street during paving operations is excavated at a cross-
   ing, the improvement being in charge and under control of
   the city officers, the city is liable for an injury to a pedestrian
   arising from an unsafe temporary cross-walk over the exca-
   vation, though it does not appear whether the city or the
   paving contractor built the cross-walk.

2. SAME—TORTS—CONTRACTS AFFECTING LIABILITY.
   A city cannot relieve itself by contract of its statutory liability
   to keep the streets reasonably safe for public travel.

3. SAME—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—QUES-
   TION FOR JURY.
   A woman, walking behind her husband across a street on a
   temporary cross-walk, was tripped by the end of a board
   springing up in her path as her husband stepped on the far-
   ther end of it. She testified that she was not looking at the
   board at the time, and did not see it rise. *Held*, that she
   was not guilty of contributory negligence, as a matter of law,
   and that question was for the jury. HOOKER, J., dissenting.

4. EVIDENCE—OPINIONS—ADMISSIBILITY.
   The daughter of plaintiff in a personal injury case testified that
   her mother did not go out as much as formerly, but that she
   could not say that it was due wholly to the accident. De-
   fendant then asked, "She has had other sicknesses that might
   cause it as well as the injury * * *, hasn't she?" The
   court sustained plaintiff's objection that the witness was not
   shown to be an expert, and stated that defendant might show
   whatever witness knew plaintiff had been afflicted with at or
   right after the accident. Defendant did not pursue the in-
   quiry further. *Held*, that no error was shown, since it could
   not be presumed that the court would have excluded proper
   questions.

5. SAME—CONDITION OF CROSS-WALK—REMOTENESS.
   A witness may testify to the condition of a cross-walk the
   morning after an accident occurred thereon, claimed to have
   been caused by the defective condition of the walk.

6. Municipal `Corporations — Claims Against City — Action —
Evidence — Competency of Witnesses not Produced Before
Council.
 A construction of a section of a city charter, excluding witnesses
  not produced before the committee on claims of the city
  council, is not called for where plaintiff's husband testifies
  that plaintiff was confined to the house at the time, that he
  assisted in collecting the evidence, and did not know of the
  witnesses in question until shortly before the trial.

Error to Kalamazoo; Adams, J.   Submitted February
1, 1906.   (Docket No. 85.)   Decided November 7, 1906.

Case by Almeda E. Barker against the city of Kalamazoo
for personal injuries.   There was judgment for plaintiff,
and defendant brings error.   Affirmed.

*Harry C. Howard* and *William R. Fox*, for appel-
lant.

*E. M. Irish*, for appellee.

McAlvay, J.   Plaintiff recovered a judgment against
defendant for injuries received from falling on a tempo-
rary cross-walk at the intersection of West Main and West
streets, in the city of Kalamazoo.   Main street runs east
and west.   West street crosses it at right angles, running
north and south.   A paving company was laying a pave-
ment on Main street at the point in question.   The old
block pavement had been torn up, the boards on which it
rested taken out, and the gravel foundation thereunder
excavated to considerable depth.   One track of the street
car line on Main street had been relaid on a cement foun-
dation, with a groove girder nine-inch rail.   Several days
previous to the accident a temporary cross-walk had been
laid from curb to curb on the west side of West street
across Main street, consisting of inch boards laid length-
wise across this street and over the street car track in the
center of the street.   The distance between the rails of
this track was about five feet, and on this cross-walk,

where it crossed the track, boards about the length of the distance between the rails were laid lengthwise upon the other boards. Plaintiff, who is a heavy woman, weighing 200 pounds, her husband, and adopted daughter, were on their way to the railroad depot to take a train for South Haven. They had come along the sidewalk on the west side of West street. The depot to which they were going was on the other side of Main street several blocks beyond. Proceeding to cross the street on this temporary crosswalk, the husband was walking ahead and the plaintiff just behind him. The adopted daughter was walking beside plaintiff. Arriving at the place where the crosswalk was over the street car track, her husband stepped on a loose board, the end of which sprang up, caught her foot, and tripped her. She fell heavily, and injured her right knee joint severely and permanently. After being helped up, she was able to proceed to the depot. She went to South Haven with her husband and daughter and returned home towards evening. She says she would not have gone had she known how severe the injury was. She was confined to her bed most of the time for several weeks, and used crutches for a long time. She recovered a verdict of $1,500.

The errors claimed to have been committed by the trial judge, and on account of which defendant asks this court to reverse the judgment, are:

1. A verdict should have been directed for defendant (*a*) because of contributory negligence; (*b*) because defendant was guilty of no negligence and had no notice of the condition of the cross-walk; (*c*) because the plaintiff assumed the risk.

2. Erroneous rulings of the court on evidence.

3. Errors committed in the charge and refusals to charge as requested.

We will first consider the negligence of defendant, and notice to it of the condition of this cross-walk. The conditions in the street at the time were that excavations for a new pavement to be put in under contract with a paving

company had been made, and in the center of the street the new railway track had been laid, and over it a temporary cross-walk had been constructed from curb to curb. By authority of the city council these improvements were in charge and under the direction of the commissioners of public improvements of the city, with the city engineer having general supervision of the work. It does not appear by whom this temporary cross-walk was constructed. The length of time it had been in place is by the evidence fixed at about 10 days, and there is evidence tending to show that it was used by the public as a cross-walk. The paving contract required the contractor, among other things, to keep open passageways and protect the same where exposed, not to delay travel upon the streets being paved, or any cross-walks beyond a reasonable time, to erect and maintain all barricades, lights, and street closure signs. This crossing was located where two of the main thoroughfares of the city intersect. Of itself it was an invitation to the public to use it, and was the only way to cross at that place, except by getting down into the excavation, which was between one and two feet deep. It is admitted that the city cannot relieve itself by contract of its statutory liability to keep the streets reasonably safe for public travel by turning it over to a contractor. In the case at bar the improvement was entirely under the supervision and control of city officials. The municipality, then, would be liable, if, under these conditions, it permitted a faulty and unsafe cross-way to be constructed and maintained, and the question was one to be submitted to the jury under proper instructions. *Beattie* v. *City of Detroit*, 129 Mich. 20.

The contributory negligence of plaintiff as appearing from her own testimony is relied upon to defeat her recovery. Her testimony shows that she had not seen this crossing before this occasion; that they came to the crossing with her husband walking just in front of her, and her daughter at her side; that she saw the crossing was a temporary one; that they proceeded until just over

the street railway track, when the short board her husband stepped on sprang up and tripped her. The portion of her testimony relied upon to show contributory negligence is as follows:

"*Q.* Were you looking at the plank when it flew up and hit you?
"*A.* No, sir; I did not see it.
"*Q.* You did not see it raise, then?
"*A.* No, sir; I felt it.
"*Q.* But you didn't see it raise?
"*A.* No, sir.
"*Q.* You weren't looking at the plank upon which you were about to step at the time you fell?
"*A.* No, sir."

She said they were inch boards, and when she lay on the ground she saw that they were old ones. Even without considering her testimony as a whole, we cannot say from the above that, because plaintiff did not have her eyes upon the board at the instant she was injured, as a matter of law she was guilty of contributory negligence. The board which tripped her was not the board upon which she was stepping at the time, but one of the short boards which lay on the crossing just over the car tracks. The existence of contributory negligence was the essential fact in the case, and it depended upon inferences to be drawn from facts and circumstances about which honest minds might differ. In such case the question was one for the jury. *Brezee* v. *Powers*, 80 Mich. 172, and cases cited. From what has already been said it will appear that the question of assumption of risk is not in the case.

2. As to errors assigned upon the rulings of the court on evidence, witness Bessie Barker, the daughter, on cross-examination relative to plaintiff's condition after the accident, stated that she did not go out as much as before, but witness could not say that it was due wholly to the accident. She was asked, " She has had other sicknesses that might cause it as well as the injury to the knee, hasn't she?" The court sustained plaintiff's objec-

tion that witness had not been shown to be an expert, and said defendant might show whatever witness knew plaintiff had been afflicted with at or right after the accident. The question as put called for the conclusion of the witness and was properly excluded. The court indicated the proper lines of examination to show what sickness plaintiff had, but defendant's counsel declined to follow the suggestion. No other questions were asked upon the subject. The question was excluded upon a specific objection. We cannot presume that the court would have excluded proper questions.

Dr. Tyler, for plaintiff, was allowed to testify that he saw this crossing on the morning following the accident, and that the boards were loose then. It is claimed that this was prejudicial and immaterial. The case involves the faulty construction of the cross-walk. The accident occurred on Sunday and witness saw the crossing Monday morning. It was not too remote, and was material upon one feature of the case.

The testimony of several witnesses for plaintiff was objected to by defendant for the reason that they were not produced as witnesses before the committee on claims of the council, as it is claimed the charter requires. This provision we have been unable to find in the record. Whatever it may be, it is not necessary for us to construe it, for the reason that plaintiff's husband testified that she was confined to the house at the time and he assisted in collecting the evidence; that he did not know of these witnesses until shortly before the trial. It was not error to permit them to testify.

3. The remaining errors assigned are upon the refusal to give certain requests of defendant, and to portions of the charge of the court. Of these 38 are to the refusal to give requests and 8 to portions of the charge. We have examined the clear and careful charge as given by the court, and find that the jury were properly instructed as to the law of the case. The substance of the requests of de-

fendant which was proper was included in the main charge.    The other requests were properly refused.

The judgment is affirmed.

CARPENTER, C. J., and BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred with MC-ALVAY, J.

HOOKER, J. (*dissenting*).    I am of the opinion that the court erred in not directing a verdict for the defendant. The case is fairly within the cases of *Shietart* v. *City of Detroit*, 108 Mich. 309; *Black* v. *City of Manistee*, 107 Mich. 61; *Irion* v. *City of Saginaw*, 120 Mich. 295; *Cloney* v. *City of Kalamazoo*, 124 Mich. 655; *King* v. *Township of Colon*, 125 Mich. 511.    The street was in the process of being paved, and to enable pedestrians to avoid the mud in crossing the contractors had laid down loose boards.    Across the street railway a temporary crossing was made by laying short boards from rail to rail. They were not fastened, and manifestly could not be, if the cars were to use the track during the process of paving, and whether used or not the city should not be expected to make more than a temporary crossing, which should not be judged by the requisities of a permanent cross-walk.    It is customary for private persons to lay down loose and unfastened boards upon their premises for temporary use, and while, perhaps, the sufficiency of the crossing made in this case may have been a proper question to submit to the jury, upon which I express no opinion, the question of contributory negligence was not.    Not only does the rule in the cases cited apply to this case, but a plaintiff should be held to a higher degree of care than usual where, as in this case, he knows and can see the temporary character of the crossing, its details of construction, and the certainty that the loose board across the track must fly up at one end, if one steps upon the other.

The judgment should be reversed, and no new trial ordered.

GRANT, J., did not sit.