# BUSHROD W. BARROW *et al.*

*v.*

# THOMAS J. WINDOW *et al.*

1. BARGAIN AND SALE—*vests property in the buyer.* The words "bargained and sold" have a settled legal meaning, and import a sale which vests the property in the buyer.

2. An averment in a declaration that the defendant bargained for and bought of the plaintiff, and that the plaintiff sold to the defendant certain specified articles, amounts to one of a sale of specific articles, which, as between the parties, passed the property in them to the defendant, although the possession remained in the plaintiff.

3. By a regular sale, even without delivery, the property is so absolutely vested in the vendee, that if it is afterwards injured in the vendor's custody, without his fault, he is still entitled to the price, because by the contract the property is in the vendee; and where the vendor retains the custody of the article after it is sold and the property completely vested in the vendee, the vendor is considered a bailee or trustee, for the use of the vendee, and subject to the doctrine of bailment and responsible for ordinary neglect.

4. But in such case, if the article is retained by the vendor awaiting payment of the purchase money or price, he must deliver or offer to deliver before he can maintain an action for the price, unless the property is destroyed without any fault of his, in which case he is excused from delivery, and may maintain his action.

5. PLEADING. In an action for the price of a specific lot of sheep, bargained and sold to the defendant, but to be delivered and paid for in the future, where the plea does not traverse the bargain and sale, it admits it, and the effect is to admit that the title to the sheep had vested in the defendant; and a plea setting up injury, occasioned to the sheep by the

fault of the plaintiff whilst in his possession, and after the sale, without showing how many and to what extent the sheep were injured, and what the fault of the plaintiff consisted in, is bad, and a demurrer to a replication to such a plea should be overruled and carried back, and sustained to the plea.

6. SAME—*recoupment.* In an action for the price of specific articles bargained and sold, but not delivered, defendant may set up, by way of a recoupment, any injury to such articles occasioned by the fault or negligence of the vendor, subsequent to the sale and prior to the time of delivery.

APPEAL from the Circuit Court of Cass county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. POLLARD & PHILLIPS, for the appellants.

Messrs. KETCHAM & GRIDLEY, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The appellants, as vendors, sued appellees, as vendees, to recover for the refusal to accept and pay for a specific lot, comprising 374 sheep.

The declaration contains but a single count, in the usual form, for not accepting and paying for goods bargained and sold, and alleges that the sheep were to be delivered by plaintiffs to defendants at the scales of the former, where they were to be weighed, they having been previously yarded twelve hours without feed or water, and paid for by defendants at the rate of six cents per pound, less $25 on the whole amount of purchase money, as follows: two car loads, making about 120 sheep, to be so delivered, taken and paid for within sixty days, from October 19, 1872, the time of the sale, and the remainder at such time, on or before March 1, 1873, as defendants might elect. It was further alleged, as part of the contract, that in case any of said sheep died before the time of delivery, plaintiffs were not to supply their places with others.

The defendants filed the general issue, which they after-wards, by leave of the court, withdrew; also two special pleas, the first of which averred, in substance, that, at the time of the sale and afterwards, plaintiffs had other sheep on their premises aside from those bargained, which other sheep were affected with an infectious disease, known as the "scab;" that before the time for delivery of the two car loads, within sixty days from time of sale, the said sheep in the declaration mentioned, without the fault or knowledge of the defendants but by the fault of the plaintiffs, were exposed to and some of them took said disease, which is common to sheep, and renders them unwholesome, unmarketable and worthless, and so rendered said sheep which had taken said disease. And further averred, that, at the time of making said contract, defendants were dealers in fat and marketable sheep, cattle, etc., and plaintiffs well knew that defendants contracted for said sheep as fat and marketable, and for the purpose of shipping them to market for mutton, and for no other purpose; and plaintiffs, knowing the premises, permitted the said sheep contracted for to become exposed to the disease aforesaid—concluding with a verification.

The second plea was like the first, except it avers that the duty of the defendants to take two car loads of said sheep within sixty days, from October 19, 1872, was afterward waived by the plaintiffs, and after such waiver, to-wit: February 1, 1873, defendants were at plaintiffs' premises, where the said sheep were, then ready, willing, and offered to accept from plaintiffs, and pay for, at the contract price, all of said sheep, except such as were diseased with the scab; and plaintiffs would not deliver any of said sheep unless defendants would accept and pay for all of said sheep, at the contract price, including those diseased as well as those not diseased, averring that said disease is common to sheep—is communicated by exposure—and when it infects them renders them unhealthy, nasty, troublesome, and of no value, which so rendered the said sheep—concluding with a verification.

To these pleas plaintiffs replied, first, by traversing the averment that said sheep got the disease mentioned by the fault of the plaintiffs; second, by traversing the averment of waiver of performance as to the two car loads to be delivered within sixty days from the time of the contract—both replications concluding to the country. Defendants interposed a general demurrer to plaintiffs' replications, which the court sustained, and rendered judgment for defendants. Plaintiffs bring the case to this court, by appeal.

The declaration alleges, "that on the 19th day of October, 1872, at, etc., the said defendants *bargained for* and *bought* of the plaintiffs, and the plaintiffs, at the special instance and request of the said defendants, then and there *sold* to the defendants a certain lot of sheep, containing 374 head, then being," etc. This allegation amounts to one of a sale of specific articles, which, as between the parties, passed the property in them to the defendants, although the possession remained in the plaintiffs; and the defendants, by not traversing it in either of the special pleas to which the replications in question were filed, admitted it. The words "bargained and sold," have a settled legal meaning, and import a sale, which vests the property in the buyer. *Seckel et al. v. Scott*, 66 Ill. 106.

"A sale," says Blackstone, "is a transmutation of property from one man to another, in consideration of some price or recompense in value." 2 Com. 447. And he further says: "As soon as the bargain is struck, the property of the goods is transferred to the vendee, and that of the price to the vendor; but the vendee can not take the goods until he tenders the price agreed on. But if he tenders the money to the vendor, and he refuses it, the vendee may seize the goods, or have an action against the vendor for detaining them. And by a regular sale, without delivery, the property is so absolutely vested in the vendee, that if A sells a horse to B for 10 *l*, and B pays him earnest, or signs a note in writing of the bargain, and afterwards, before the delivery of the horse or

money paid, the horse dies in the vendor's custody, still he is entitled to the money, because, by the contract, the property was in the vendee." 2 Com. 448–9.

We have no statute of frauds in this State requiring a note or memorandum of the bargain in writing unless there was delivery of some part of the goods or payment of part of the price. And it is the established law here, that, as between the parties, the title to personal property passes without delivery, whenever the sale is completed ; and an agreement to sell an article by weight or measure, when the article is identified and the price agreed upon, may be a complete sale, if the parties intended it as such, although the article sold is not weighed or measured. *Holliday* v. *Burgess*, 34 Ill. 193 ; *Seckel et al.* v. *Scott, supra* ; *Wade* v. *Moffett*, 21 Ill. 110, and cases there cited.

If the term "sale," of itself, imports a transmutation of property from one person to another, and a sale may be complete and the property pass when the sale of specific articles is by weight and the price agreed upon, if the parties intended it as such, although the articles have not been weighed, it follows that the words "bargained and sold," in the declaration, would import, as a construction of the pleading, everything requisite to a regular sale, including the intention of the parties. Hence, if the defendants desired to contest the question of intention, they could do so only by leaving their plea of general issue on file, and have the point passed upon by the jury. For all the purposes of this case, as the record stands, a sale which transferred the property of the sheep to the defendants must be regarded as admitted, and the pleas and replications tested upon that basis.

Before proceeding to apply principles to these pleadings, it will be well to inquire further into the legal relations subsisting between these parties, under the matter of the declaration thus admitted, and their respective rights and duties growing out of such relations. We have quoted fully from Blackstone, and it has been frequently said the rule of the

common law is well stated in Noy's Maxims, c. 42 : "If I sell my horse for money, I may keep him until I am paid, but *I can not have an action of debt until he is delivered;* yet the property of the horse is, *by the bargain,* in the bargainor or buyer. But if he do presently tender me my money, and I do refuse it, he may take the horse and have an action of detainment. And if the horse die in my stable, between the bargain and the delivery, I may have an action of debt for my money, because, by the bargain, the property was in, the buyer." *Hinde* v. *Whitehouse,* 7 East, 558. By this rule, if the horse is still living, and capable of delivery, the vendor can not maintain an action for his money without delivery or tender of delivery. *Potter* v. *Cowand,* Meigs, (Tenn. R.) 26. But if the horse die in the vendor's stable between the bargain and delivery, such action may be maintained, because, by the bargain, the property was in the buyer, and the death of the horse was a sufficient excuse for non-delivery. The death of the horse, in the case here supposed, which would excuse delivery, is, of course, assumed to be without the fault of the vendor.

In Cowen's Treatise, 2d ed. part 1, p. 50, we find the doctrine more fully stated by that learned author. He says: "By a regular sale, even without delivery, the property is so absolutely vested in the vendee, that if it afterwards dies or is destroyed in the vendor's custody, *without his fault,* still he is entitled to the price, because, by the contract, the property is in the vendee; and where the vendor retains the custody of the article after it is sold, and the property completely passed to the vendee, the vendor is considered a bailee or trustee, for the use of the vendee, and subject to the doctrine of bailment, and would be responsible for ordinary neglect, within the reason that both parties are benefited by the bailment, and the contract out of which it grows."

In *Lansing* v. *Turner,* 2 Johns. R. 13, THOMPSON, J., said, in such case the inference of law would be that the vendor became a mere bailee, retaining the possession at the request

of the vendee, and responsible for gross negligence. The expression *"mere* bailee," was strictly applicable to the facts of that case, as by them the vendors were assumed to have already made delivery, and consequently that part of their contract was fully executed. So in *McCandish* v. *Newman,* 22 Penn. (10 Harris) 460, it was held, that the vendor was bound to keep the article sold with ordinary care, and responsible for the want of that care or of good faith.

Under the circumstances of the case in hand, the position of the vendors was not that of mere bailees, but presented a double aspect: one involving the duties and responsibilities of bailees, the other the performance of their contract, which, as to delivery, was still executory. By the contract, as set out in the declaration, the plaintiffs were to deliver the sheep in a particular way, at a specified place and times. The sheep were to be yarded twelve hours without food or water, then weighed on plaintiffs' scales, and there delivered to, taken, and paid for by the defendants. As we have already seen, the vendors, without delivery or tender, can not maintain an action for the price. This should be understood, with the exceptions, unless they were discharged by the act of the buyer, or could show that they were prevented by the death or destruction of the article, without their fault. If the death or destruction of the article was caused by the culpable act or negligence of the vendor, it would be against every principle of equity or justice to allow such death or destruction to constitute a legal excuse. That would be to permit a party to take advantage of his own wrong.

That precise question can not arise here, because none of the sheep had died. But a kindred one, that is, one depending upon a similar principle, may arise. If the article, while in the vendor's custody, and between the bargain and delivery, should become injured through his culpable act or negligence, so as to become worthless thereby, although still in existence and capable of physical delivery, would these facts be an absolute bar to an action for the price? Take the case

put by Noy, of the horse. Suppose, through the vendor's culpable act or negligence, between the sale and delivery, the horse should have both his eyes put out, or some injury which would render him worthless but still leave him alive and capable of delivery, could the seller, by tendering him in that condition, maintain an action for the price, or would the law regard the tender in such condition as a substantial failure to deliver ? If the latter, then the injury so occasioned would be an absolute bar; if not, the buyer could either maintain an action against the seller upon tendering the price, or, if sued for the price, recoup his damages, by reason of the breach of seller's duty as bailee, in failing to keep the horse with ordinary care. What injury, if any, to the property while remaining in the vendor's custody, after sale, will constitute an absolute bar to his action for the price, is a question upon which we have been favored with no argument or authorities by counsel for either party. *Substantial* performance of contracts, when entered into by competent parties, upon a sufficient consideration, is universally demanded by the law, unless the party charged can show a sufficient legal excuse.

There is no doubt, however, that, under the doctrine and responsibilities of bailment, the buyer could, upon the proper plea, set up the injury and damage in such case, by way of recoupment, because growing out of the same transaction as the claim of the vendor. *Burroughs* v. *Clancey*, 53 Ill. 30, and cases cited. But the pleas in question are not framed, and are clearly not sufficient for that purpose. They go upon the theory that the matter of them constituted an absolute bar to the action.

The gist of the first plea is, that plaintiffs having other sheep on their premises which were infected with the disease, by their fault they permitted the sheep sold to be exposed to it, and some of them caught the disease, thereby rendering such sheep worthless, wherefore plaintiffs could not recover. The second plea is the same, only it avers a waiver of defendants' obligation to take two car loads in sixty days, and avers

that, after that, defendants offered to take and pay for all that were not so diseased at the contract price, but plaintiffs refused, unless they would take all.

These pleas are both clearly bad in substance. The court could not say, from the matter stated, that plaintiffs were not entitled to recover. It is not averred how many sheep got the disease, or that plaintiffs were guilty of any culpable act or negligence which occasioned the injury. What is meant by "the fault of the plaintiffs?" What sort of fault was it? Do those words import a fault which amounted to a breach of the duty to exercise ordinary care in keeping the sheep? Do they import a culpable fault? It is not averred that plaintiffs wrongfully or negligently permitted the sheep sold to become exposed, nor are there facts stated from which culpable negligence can be inferred. The only fact of that tendency is, that, at the time of the sale, and afterwards, plaintiffs kept other sheep upon their premises which were infected with the disease known as "scab." But it is not of itself an act of culpable negligence to keep animals having an infectious disease. Shearm. and Redf. on Neg. sec. 193. This being so, it was necessary to aver that the vendors negligently permitted the sheep bargained and sold to be exposed to the disease. But, even upon the defendants' theory, we can not perceive why the court sustained a demurrer to the replications which traversed the averment that the sheep were exposed by the fault of the plaintiffs. We are of opinion that the court should have overruled the demurrer to the replications, and carried it back and sustained it to the pleas.

For this error the judgment will be reversed and the cause remanded, with directions to the court to so dispose of the demurrer, and grant defendants leave to file the general issue and amend their special pleas.

*Judgment reversed.*