[No. 7747. Decided May 3, 1909.]

BESSIE BARTLETT BEVAN, *Respondent,* v. B. L. MUIR *et al.,*
*Appellants.*[1]

JUDGMENTS—PERSONS CONCLUDED—NOTICE TO DEFEND—SUFFI-
CIENCY—COVENANTS. A written notice to defend an action is suffi-
cient, where vendors had warranted the title to personal property,
the vendee gave notice that an administrator of the estate of H.,
deceased, had filed his petition in said estate claiming title to the
property and claiming that vendors' title rested upon a fraudulent
conveyance by the supposed widow of said deceased, that the vendee
had been ordered to appear at a certain time to show cause before
the Hon. R. B. Albertson why a receiver should not be appointed,
and the notice required the vendors to appear and defend said action
(Rudkin, C. J., dissenting).

COVENANTS—WARRANTY—SALES—PROPERTY CONVEYED—RULES OF
CONSTRUCTION. A bill of sale of "all our interest" in certain personal
property, specifying that the sale is subject to certain described liens
which the vendee assumed to pay, and concluding with a general
covenant "to warrant and defend the sale of said property," warrants
the vendor's title to the property and is not a mere quitclaim of the
vendor's interests; since, while covenants affect only the interest
conveyed, such interest is to be determined by the intent of the
parties, construing all the terms of the contract together, and most
strongly against the vendor.

COVENANTS—WARRANTY—BREACH—DAMAGES RECOVERABLE — PAY-
MENTS ON ASSUMED DEBT—SALES—INTERESTS WARRANTED. Upon
breach of a warranty of vendor's interest in property which he
had held under a conditional sale, sold subject to the original own-
er's lien for unpaid purchase money, which the vendee assumed and
agreed to pay, the vendee cannot recover a sum paid in partial dis-
charge of such lien, on the theory that it was part of the purchase
price.

Appeal from a judgment of the superior court for King
county, Frater, J., entered May 20, 1908, upon findings in
favor of the plaintiff, after a trial on the merits before the
court without a jury, in an action for damages for breach of
warranty. Modified.

*Will H. Thompson, C. A. Riddle,* and *Trumbull & Trum-
bull,* for appellants, contended, among other things, that the

[1]Reported in 101 Pac. 485.

notice was insufficient; it must be unequivocal, certain and explicit.  8 Am. & Eng. Ency. Law (2d ed.), p. 204; *Dalton v. Bowker*, 8 Nev. 190; *Paul v. Witman*, 3 Watts & S. (Pa.) 407; *Greenlaw v. Williams*, 2 Lea (Tenn.) 533; *Williams v. Burg*, 9 Lea (Tenn.) 455; Rawle, Covenants for Title (4th ed.), p. 232.

*Shank & Smith*, for respondent, upon the point that the notice to defend was sufficient, cited:  8 Am. & Eng. Ency. Law (2d ed.), p. 205; 23 Cyc. 1272; *Collins v. Baker*, 6 Mo. App. 588; *Paul v. Witman*, 3 Watts & S. (Pa.) 407; *Clark v. Mumford*, 62 Tex. 531; *Patrick v. Laprelle* (Tex. Civ. App.), 40 S. W. 552; *Greenlaw v. Williams*, 2 Lea (Tenn.) 533.

DUNBAR, J.—This is an action for damages for breach of warranty on a sale of chattels and chattel interest in real estate, evidenced by bill of sale.  Frederick & Nelson, Inc., had conditionally sold and delivered certain household goods to one Cook, upon an installment contract, reserving title to itself until the goods should be entirely paid for.  One J. M. Hale, by subsequent transfers, acquired the interest of Cook, entered into possession, and subsequently died while so in possession, leaving the goods in the possession of one known as Mrs. H. G. Hale, supposed to be his widow.  Afterwards she sold her right, title, and interest in the goods to third parties, and thereafter, through a number of transfers, the equity of the original vendee was vested in the appellants in this case.  Afterwards appellants sold to the respondent all their interest in the goods, and delivered to her the possession thereof, they being in the possession of the property at the time it was sold.  Afterwards the estate of J. M. Hale, through one H. C. Gill, administrator thereof, brought an action against respondent, in which it was claimed that said goods were the property of the estate of J. M. Hale, deceased, and in that action the administrator recovered the goods, and the same were lost to respondent.  While that

action was pending and before trial, the respondent gave notice to the appellants of the pendency of said action, requiring the appellants to appear and defend the same, which notice was in writing. The appellants did not appear and defend said action, and it is claimed by the respondent, and found by the trial court, that said notice was sufficient to bind the appellants by that judgment.

The court, trying the case without a jury, made findings of fact, the first and second of which are substantially as stated above, and set forth in the findings the bill of sale, which was as follows:

"Know All Men by These Presents: That B. L. Muir and Clyde W. Coit and Charles A. Cushing, and Helen E. Cushing, the parties of the first part, for and in consideration for the sum of one dollar gold coin of the United States of America, to them in hand paid by Mrs. Bessie Bartlett Bevan, the party of the second part, the receipt whereof is hereby acknowledged, do by these presents grant, bargain, sell and convey unto the said party of the second part her executors, administrators and assigns all our interest in the furniture, household goods and fixtures in or used in connection with that certain sixty-room family hotel known as the 'Burlington,' located on Madison street, in the city of Seattle, King county, Washington, and being number 612 Madison street. Said property is taken subject to a lien of six thousand six hundred and twenty-seven dollars and eleven cents ($6,627.11) with interest from December 24th, 1906, in favor of Frederick and Nelson Inc. And an indebtedness of one thousand dollars ($1,000) to Mrs. H. G. Hale, which the purchasers assume and agree to pay.

"To have and to hold the same to the said party of the second part, her executors, administrators and assigns, forever. And they do for their heirs, executors and administrators, covenant and agree to and with the said party of the second part, executors, administrators and assigns, to warrant and defend the sale of the said property, goods and chattels hereby made unto the said party of the second part her executors, administrators, and assigns, against all and every person and persons whomsoever lawfully claiming or to claim the same." (Duly signed and acknowledged.)

The bill of sale of the lease followed. The court found, that the purchase price of the property was $10,500, of which $2,872.89 was cash paid by the plaintiff to the defendants on said January 7, 1907; that $6,627.11 was the balance of the purchase price of the furniture and furnishings owing to Frederick & Nelson, Inc., and the remaining $1,000 was a note given by a prior owner to the payee named as Mrs. H. G. Hale, being the two obligations specified in the bill of sale, and the payment of which the plaintiff therein assumed as a part of the purchase price; that thereafter, and prior to May 1, 1907, the plaintiff made payments on said indebtedness to Frederick & Nelson, Inc., in accordance with her said contract of assumption, aggregating $500, making a total of sums paid by her on the purchase price of $3,272.89, as aforesaid; that the legal title to the furniture and furnishings was on said January 7, 1907, and for some time thereafter, in Frederick & Nelson, Inc.; that on June 4, 1907, one H. C. Gill, the duly appointed, qualified, and acting administrator of the estate of J. M. Hale, deceased, brought suit as set forth in the statement above; that under the institution of said suit on June 4, 1907, the said administrator obtained an order upon the plaintiff to show cause upon June 7, 1907, why the said furniture, furnishings, and leasehold should not be forthwith turned over to the said administrator or else a receiver be appointed; that summons and complaint and the said order to show cause in said action were served upon said plaintiff on June 5, 1907, and that thereupon, on June 6, 1907, the following notice to defend was personally served upon each of the three defendants herein, that is to say:

"NOTICE TO DEFEND.

"To Clyde W. Coit, Charles A. Cushing, Helen E. Cushing, and B. L. Muir:

"You and each of you are hereby notified that H. C. Gill, as administrator of the estate of J. M. Hale, deceased, has filed his petition in said estate and obtained an order upon Mrs. Bessie Bartlett Bevan, otherwise known as Mrs. S. E. Bevan, in said petition claiming that the title to the property

which you sold to Mrs. Bessie Bartlett Bevan under a contract of warranty on the 7th day of January, 1907, which property is known as the furniture, household goods and fixtures in or used in connection with that certain sixty-room family hotel known as the Burlington, located on Madison street, in the city of Seattle, King county, Washington, and being numbered 612 Madison street, is the property of the estate of J. M. Hale, deceased, and that the title to said property has never passed out of said estate, and that the transfer of said property from some one representing herself as the widow of said J. M. Hale, deceased, is fraudulent, and that said person was not the widow of said J. M. Hale, deceased. The court has ordered Mrs. Bevan to appear before the Honorable R. B. Albertson tomorrow morning, June 7th, 1907, at 9:30 o'clock in the forenoon, to show cause, if any, why the administrator of said estate should not be let into possession of said property, or otherwise why a receiver should not be appointed to take charge of said hotel and property. Now then, you are further notified that it is your duty to defend said action, and that the said Mrs. Bevan hereby demands that you do appear in said action and defend the same under your contract of warranty. Hereof take due notice.

"R. S. Jones, Attorney for Bessie Bartlett Bevan;"

that all of the defendants failed to defend the said action, and that plaintiff defended the said action,—in short, was dispossessed of the property, and that by reason of said action the whole thereof was lost to plaintiff.

The conclusions of law were to the effect, that the property was sold by warranty of title except only as against the said two claims mentioned above; that the defendants were duly notified to defend the suit brought by the administrator of the estate of J. M. Hale; that they failed to do so, and that the plaintiff has been damaged by, and is entitled to judgment against, each of the defendants on their warranties of title, in the sum of $3,372.89, with interest on $2,872.89 thereof from January 7, 1907, and on the remaining $500 thereof from May 1, 1907. The appellants excepted to said findings of fact and conclusions of law and each of them,

which exceptions were overruled, and judgment was entered and appeal taken.

Several assignments of error are made, but it is conceded and stated by the appellants that the whole contest between the parties in this case is not upon any question of fact, but involves two legal propositions; (1) was the notice to defend a sufficient notice to bind the defendants by a judgment in the case wherein the respondent was deprived of any interest she then had in the property then in her possession, the title to which remained in Frederick & Nelson, Inc.; (2) was the sale by the appellants of all their interest in the chattel property equivalent to a sale of the property itself; or, in other words, was the sale of their interest in the property, the title to which was known at the time to be, and found by the court to be in, Frederick & Nelson, Inc., a third party, equivalent to a sale of the property itself, or was it only the passing of the appellants' interest, whatever it might be, to the respondent.

On the first proposition, it is earnestly argued by the appellants that the notice was not sufficient, and many cases are cited to sustain the rule that the notice must be distinct and unequivocal, and must expressly require the party bound by the covenant to appear and defend the adverse suit. Conceding this to be the law, we think, without doubt, the notice was sufficient; for, after all is said and done, the plain, common-sense idea must not be lost sight of, that the object of the notice required is *notice*, and no matter what the form of the notice is or the expressions used, if the party bound by the covenant can understand from it that a suit has been commenced and that he is required to defend, the object of the notice is met. In this case, if a person of ordinary understanding was not able to find the court in which the case mentioned in the notice was pending, it must have been by reason of a want of inclination.

On the second proposition, it is contended by the appellants that a warranty cannot add to or increase the covenants;

that a covenant to transfer all right, title, and interest in property is not added to or increased by a general warranty; that the warranty is co-extensive with, and shall be applied only to, the question of the estate granted by the covenant. It may be conceded that the covenant does not affect anything more than the interest conveyed, but the question is always left as to what was conveyed. In support of the contention of appellants is cited Rawle on Covenants for Title (4th ed.), pp. 525-6-7, and the authorities there cited, and the appellants stated that the author, after quoting numerous authorities, closes in these words:

"So that in a more recent case where the grant was of 'all my right, title and interest in and to that parcel of real estate situated in Green street and is bounded, etc.,' followed by unlimited covenants for the seizin, good right to convey, against incumbrances, and of warranty, it was held that these covenants were limited merely to the right and title of the grantor, whatever they might be, and the law has been so held in many similar cases."

It is significant, however, that the author in the very next section continues as follows:

"It may, however, be observed of these cases, that inasmuch as all conveyances taking effect under the Statute of Uses transfer no more than the estate of the party, such a course of decision, if too strictly carried out, would in such conveyances restrain all general covenants for title to the acts of the vendor, and thus of course utterly change the nature of such covenants. It is conceived therefore that this class of cases should be limited in their application to those where the intention to convey and receive but a limited estate plainly appears on the face of the deed. And in a case in Massachusetts, where the conveyance was of 'the following described water lots,' and appended to the description by metes and bounds, the words 'meaning and intending by this deed to convey all my right, title and interest in and to lots three and six, and my undivided portion of the aforementioned flats,' it was held that the general covenants for title which the deed contained were not restricted merely to the interest of the grantor. So in a late case in Vermont, where

the grant was of 'the following described land in Colchester, all the land which I own by virtue of a deed, being all my right and title to the land comprising fifty acres of the east of lot 75 in said town,' it was held that the covenants were not qualified by the grantor's interest."

Other cases are cited by the author to the same purport. So that it will be seen that the author, when he is fairly understood, does not lay down the hard and fast rule contended for by the appellants. The next case cited by the appellants, viz., *McNear v. McComber*, 18 Iowa 12, lays down the unqualified rule contended for by appellants, and cites the same section of Rawle on Covenants cited by the appellants to sustain the decision. This case, we think, is not well considered, and was decided through a misapprehension of what was held by the authorities therein cited. To the same substantial effect are the other cases cited, excepting that it appears in most of them that the question of what was conveyed is to be determined from the whole instrument, instead of from any particular portion of the instrument. Thus, in *Sweet v. Brown*, 12 Met. 175, 45 Am. Dec. 243, after deciding that in that case the covenants would not control the grant, the court said:

"The covenants are in terms general; but in the construction of a deed, we are to look at the whole deed, and the covenants are to be construed so as to give effect to the intention of the parties, so far as can be done consistently with the rules of law."

This must necessarily be the case, and is the rule in the construction of all instruments and contracts. The desire and aim of the court must be, if justice is to be done to litigants, to ascertain the intention of the parties to the contract; and it is a rule as broad as the law itself that all the different dependent portions of a contract must be construed together to ascertain such intention.

"If the language used is susceptible of more than one construction, that one must be adopted which militates most strongly against the interests of the grantor."

This was said by this court in *Maxwell v. Harper*, 51 Wash. 351, 98 Pac. 756, citing Devlin on Deeds, § 848. In that case we cited with approval *Jackson v. Myers*, 3 Johns. 388, 3 Am. Dec. 504, where it was said by Chancellor Kent:

"The intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect."

Applying this rule to the case at bar, it seems conclusive that the appellants intended to give the respondent in this case something more than a mere quitclaim to this personal property; and the covenants, while it may be conceded that they cannot control the premises, may appropriately be considered by the court when a question arises as to what is granted, for the purpose of aiding the construction to be given to the instrument. 13 Cyc. 620. The language of this instrument, "Do by these presents grant, bargain, sell and convey unto the said party of the second part  .  .  .  all our interest in the furniture, household goods and fixtures in or used in connection with that certain sixty-room family hotel," etc., if construed by themselves might possibly bear the construction contended for by the appellants; but when the further language appears, "Said property is taken subject to a lien of $6,627.11 with interest," etc., "and an indebtedness of $1,000 to Mrs. H. G. Hale, which purchasers assume and agree to pay," it must be concluded that the whole property was sold subject to these two incumbrances, just as property is sold subject to mortgages. Now, the covenant, viz., "agree to and with the said party of the second part, executors, administrators, and assigns, to warrant and defend the sale of the said property," still further sustains this contention, for the said property named in the covenant must necessarily refer to the property mentioned in the contract of sale, viz., the property that is taken subject

to the liens expressed.   Therefore, it is the property that is
sold; and the warranty is to defend the title to said property,
viz., the property that is sold.   If this construction cannot
be placed upon this instrument, then all that part of the in-
strument after the first paragraph is absolutely without mean-
ing; because if it was nothing but a quitclaim to the property
that was intended to be conveyed, there would not be any
necessity for saying anything about what it was sold subject
to.   In fact, it would seem that a covenant of warranty has
no place in a quitclaim contract.   Besides, the words "bargain
and sell" have a legal meaning, importing a sale which in-
vests the property in the buyer; and while that might not be
absolutely controlling, it is one of the expressions used in the
·instrument which help to construe it.   This announcement is
made in 43 Century Digest, 263, to the effect that the words
"bargain and sale" have a settled legal meaning, and import
a sale which vests the property in the buyer.   The same an-
nouncement is made in *Barrow v. Window*, 71 Ill. 214, citing
*Seckel v. Scott*, 66 Ill. 106, and 2 Blackstone's Commentaries,
447.   We think the court did not err in placing the construc-
tion upon this instrument which it did.

We are unable, however, to understand any theory upon
which the court gave judgment for $500 which was paid by
the respondent to Frederick & Nelson, subsequent to the sale
to her by the appellants.   In speaking of the criticism of the
appellants on this proposition, it is said by the respondent in
her reply brief:

"The brief overlooks entirely that the contract of the par-
ties put the subsequent payment of this $500 by respondent
to Frederick & Nelson in the exact position of a payment to
the appellants on the purchase price."

But neither the findings of the court nor the contract of
sale bears out this contention, for the property was sold sub-
ject to this claim of $6,627.11 owing to Frederick & Nelson,
Inc., and the $1,000 indebtedness of Mrs. H. G. Hale; and
if it was sold subject to that, of course the appellants were

released from any obligation to pay those charges against the property, under any circumstances. The respondent was buying a property worth something over $10,000, and paying therefor to the appellants the amount for which she had asked and obtained judgment, and must have understood from the contract that, if the appellants' claim against the estate was to be paid off, it must be paid off by her. If she can pay to Frederick & Nelson $500, and charge the same back to these appellants, on this sale contract, she could pay the whole amount of $6,627.11, together with the $1,000 indebtedness to Mrs. H. G. Hale, and charge the same back to the appellants, and recover therefor; the result being that she would obtain the whole property for the sum of $2,872.89. This must have been the theory upon which the court made the following finding:

"That thereafter and prior to May 1, 1907, the plaintiff made payments upon the said indebtedness to Frederick & Nelson, Inc., in accordance with her said contract of assumption, aggregating five hundred dollars, making a total of sums paid by her on the purchase price of $3,272.89 as aforesaid."

Surely if the findings of the court are correct, and this payment of $500 was made to Frederick & Nelson in accordance with respondent's contract of assumption, there is no theory upon which that payment could be charged back against the appellants in this case.

The judgment will, therefore, have to be modified to the extent of the $500, and the appellants will recover their costs in this court.

FULLERTON, GOSE, CHADWICK, MOUNT, and CROW, JJ., concur.

RUDKIN, C. J. (dissenting)—In my opinion the notice to appear and defend was misleading and utterly insufficient in law. I therefore dissent.