[No. 15274.   Department One.   July 9, 1919.]

# ALASKA PACIFIC STEAMSHIP COMPANY, *Respondent,* v. SPERRY FLOUR COMPANY, *Appellant.*[1]

INDEMNITY (9)—JUDGMENT (208)—CONCLUSIVENESS, AS AGAINST INDEMNITOR, OF FORMER ADJUDICATION AGAINST INDEMNITEE.   Where a flour company and a steamship company were jointly sued for injuries·sustained by a stevedore in a fall from a defective plank at the flour company's dock, a nonsuit in favor of the flour company, because of plaintiff's failure to show its control or responsibility for the plank in question, is not conclusive or *res judicata* as to the steamship company as to that fact, as between it and the flour company in the steamship company's subsequent action to recover over from the flour company on the latter's contract to furnish safe appliances while the ship was loading at the dock; since they were not adversaries in the former suit, and the steamship company had no control over plaintiff's presentation of his case.   (*Seattle v. Erickson,* 99 Wash. 543, overruled.)

NEGLIGENCE (6)—USE OF PREMISES—INVITATION.   A flour company maintaining docks and approaches for the use of ships loading flour owes the positive duty to keep its premises safe for the use of servants of others expected to use it.

INDEMNITY (7-2)—JOINT TORT-FEASORS.   A flour company maintaining a dock and dolphins for the use of vessels loading flour owes the primary duty of keeping the same and their approaches reasonably safe; but where, from the nature of a dolphin and its tendency to sway with the surging of the ship, a plank approach to it was liable to become insecure, the steamship company's· failure to inspect it before ordering a stevedore to use it might be an independent act of negligence on its part, making it a joint tort-feasor with the flour company, as to an injury sustained by a stevedore in attempting to use the plank, so that there could be no recovery over from the flour company by the steamship company after paying judgment recovered for the personal injuries sustained.

SAME (9) — JUDGMENT (208) — CONCLUSIVENESS, AS AGAINST INDEMNITOR, OF FORMER ADJUDICATION AGAINST INDEMNITEE.   In an action by a stevedore against his master and the owner of a dock, used by invitation, for injuries sustained by reason of the defective condition of a plank approach, in which the master claimed that its codefendant was alone responsible, a judgment of nonsuit as to such codefendant, voluntarily accepted by it on failure of the

[1]Reported in 182 Pac. 634; 185 Pac. 583.

plaintiff to show its responsibility, followed by trial on the merits and judgment against the master, is *res judicata*, as between the codefendants, as to the four points tried out, (1) that the plank approach was insecurely fastened and unsafe, (2) that the master was liable to the servant for the injuries received, (3) that the servant had not contributed to the injury, assumed the risk, or been injured by a fellow servant, and (4) that his damages are shown by the judgment.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered August 8, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover over the amount paid in satisfaction of a judgment for personal injuries sustained by a longshoreman. Reversed.

*Hayden, Langhorne & Metzger,* for appellant.
*Huffer & Hayden,* for respondent.

TOLMAN, J.—This case was before this court on a prior appeal from a judgment on the pleadings, and that judgment having been reversed (94 Wash. 227, 162 Pac. 26), the pleadings were recast and the cause proceeded to trial upon the merits before a jury, which rendered a verdict in favor of respondent for the full amount demanded, and this appeal followed.

With one possible exception, the questions now involved were not raised by the former appeal, and a restatement of the facts and issues thus becomes necessary. In the light of the verdict, the following seems to be a fair statement. Respondent is a steamship company, which, at the time of the accident hereinafter mentioned, was operating a steamship between Tacoma and other ports. Appellant owned and operated a flour mill on the water front, in the city of Tacoma, and maintained in front of its premises a dock and dolphins for the use and convenience of ships coming to its mill to load its products. One of these dolphins consisted of a cluster of four or five piles

driven into the bed of the harbor, situated some ten or twelve feet from the shore, and there was a plank approach from the shore to the dolphin for the use of employees in passing back and forth to perform the duty of fastening and unfastening vessels using appellant's dock. In accordance with a previous agreement, at the time in question, respondent sent its ship, the Admiral Sampson, to appellant's dock to load flour. The vessel was moored to the dock and a line was passed from it to and secured about the dolphin referred to, for the purpose of holding the vessel in its place during the loading operations. After the loading was completed, one Joseph Egan, an employee of respondent, was, in the performance of his regular duties, sent to unfasten and cast off the line from the dolphin, and undertook in carrying out this duty to pass from the shore to the dolphin on the plank approach maintained by appellant for that apparent purpose. While Egan was moving along the plank and about half way from the shore to the dolphin, the end of the plank slipped off of the dolphin, and Egan was precipitated upon the rocks below, and sustained serious personal injuries. Egan brought suit against both the respondent and appellant, alleging in his complaint that the plank connecting the dolphin with the shore, the slipping of which caused his injuries, was a part of the plant of appellant; that the plank was insecurely fastened and was unsafe, all of which was unknown to him, ''but the fact that it was insecurely fastened and was unsafe and dangerous was well known, and should have been well known, to the defendants, and that said defendant Sperry Flour Company had carelessly and negligently constructed the same in an unsafe and dangerous position, and had carelessly and negligently allowed the same to become out of repair. And that the defendant Alaska

Pacific Steamship Company had carelessly and negligently used said dolphin and the plank connecting the same with the shore, when the same was in a dangerous and unsafe condition, and dangerous for the use which it was put to, which danger was unknown to the plaintiff, but well known, or in the exercise of reasonable care and inspection should have been well known, to the defendants and each of them.''

Each of the parties defendant answered to Egan's complaint, denying the negligence charged against it, and denying information or knowledge sufficient to form a belief as to the negligence charged against the other, and respondent, in its answer, reiterated the allegation that the plank approach was constructed and maintained as a part of the plant of the Sperry Flour Company. The cause proceeded to trial before a jury, and at the close of the plaintiff's case, the Sperry Flour Company moved for and obtained a judgment of dismissal in its favor because of the failure of Egan to prove that it furnished, controlled, or was in any way responsible for the plank approach to the dolphin. The respondent did not at any time in that action give notice to appellant that it claimed that appellant was liable over to it, and did not tender to appellant the defense of that action, as is customary in cases where a liability over is thought to exist. After the dismissal of appellant therefrom, the Egan case proceeded against respondent, it alone defending, and resulted in a verdict and judgment in favor of Egan and against respondent. Having paid that judgment, respondent brought this action to recover the amount expended by it in defense of the Egan suit, in medical and hospital charges which it incurred in caring for Egan after he was injured, and the amount paid in satisfaction of the Egan judgment, upon the theory that it was appellant's duty to furnish respondent and

its employee Egan with a safe approach to the dolphin, and that the injuries to Egan were wholly due to the failure to perform its duty in that respect.

Prior to the former appeal, in addition to the general denials and the affirmative answer discussed in our former opinion, appellant had pleaded affirmatively that the judgment of dismissal entered in the Egan case as to it was a bar to this action, to which plea respondent had replied, setting up other matters of record in the Egan suit, but not, of course, denying the entry of that judgment. After the case was sent back on remittitur, the trial court, apparently upon the theory that, as the appeal had been taken from a judgment upon the pleadings in favor of the defendant, this court would have sustained that judgment had the uncontroverted allegations of either affirmative answer constituted a good defense, on motion struck the plea of *res judicata*, and this is the first error assigned.

It must be admitted that, if the judgment for the defendant upon the pleadings could have been sustained upon any ground, it was the duty of this court to affirm it, no matter how erroneous may have been the reasoning of the trial court in arriving at that judgment. And respondent contends that, by reversing the former judgment, we have determined as the law of the case that no defense was stated by the admitted facts of the answer, notwithstanding the fact that the defense of *res judicata* was nowhere discussed or even mentioned in our former opinion That there is authority to sustain this view, we have no doubt. *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.*, 62 Wash. 436, 113 Pac. 1104; 4 C. J. 1105; *Morrison v. Kuhn*, 80 Fed. 740; *In re Cook's Estate*, 143 Iowa 733, 122 N. W. 578; *Western Union Tel Co. v. Sutton*, 140 Ky. 729, 131

S. W. 773; *McKinney v. State ex rel. Nixon,* 117 Ind.
26, 19 N. E. 613; *Harwi Hardware Co. v. Klippert,*
73 Kan. 783, 85 Pac. 784.

However that may be, we are now of the opinion
that the judgment in the Egan case, which was a judg-
ment of nonsuit only, is not a bar to this action, be-
cause, even though treated as a judgment on the
merits, appellant and respondent were not adver-
saries in that case. Egan controlled the introduction
of the evidence, and because he deemed it unnecessary
or found it impossible to there produce evidence tend-
ing to show that appellant constructed and maintained
the plank approach as a part of its plant, still re-
spondent was in nowise responsible for such failure
of proof, had no means of preventing it or supplying
the deficiency, and could not be bound thereby. *Pull-
man Co. v. Cincinnati N. O. & T. P. R. Co.,* 147 Ky.
498, 144 S. W. 385; *Keagy v. Wellington Nat. Bank,*
12 Okl. 33, 69 Pac. 811; *Broadway Coal Min. Co. v.
Robinson,* 150 Ky. 707, 150 S. W. 1000.

Appellant, upon this point, relies chiefly upon two
cases from this court; the first, *Seattle v. Northern
Pac. R. Co.,* 63 Wash. 129, 114 Pac 1038, is clearly dis-
tinguishable upon the facts, and the principle involved
so clearly so that it is wholly unnecessary for us to
discuss it here; the other case, *Seattle v. Erickson,*
99 Wash. 543, 169 Pac. 985, is not so easily disposed of.
Had the court there rested its decision upon the fact
that there was no evidence that the injury was due to
the negligence of the respondent, who was then de-
fending against the attempt of the city to hold him
liable over because of the terms of the contract with
him, as the fact is stated to be, the result would have
been the same, and the court would have gone as far
as was necessary to a decision of that case, and as
far as the pleadings justified. We think, so far as it

is based upon the defense of *res judicata,* that case must be overruled.   Upon this point appellant also relies upon the case of *Kansas City v. Mitchener,* 85 Mo. App. 36, which, though it seems to support the position contended for, is, we think, against the great weight of authority including the cases we have heretofore cited, and contrary to the doctrine laid down in 1 Freeman, Judgments (4th ed.), § 158; 2 Black, Judgments (2d ed.), § 618; and 1 Herman, Estoppel and Res Judicata, § 136.   We conclude that the trial court did not err in striking the defense of *res judicata.*

It is urged that the trial court erred in refusing a set of instructions proposed by appellant, the purpose of which was to tell the jury that, if respondent knew, or in the exercise of reasonable care on its part should have known, of the defective and unsafe condition of the plank approach, and nevertheless directed or permitted Egan to use the same, it thereby committed an independent act of negligence, or was guilty of contributory negligence to an extent which would make it a joint tort-feasor and defeat its right of recovery. So far as Egan was concerned, both of the parties hereto were under equal obligation to refrain from using or permitting the use of unsafe appliances; but, as between themselves, an entirely different question is presented.   The trial court correctly instructed the jury to the effect that,

"When by arrangement between two persons the one comes upon the premises of the other for a business purpose common to both, the owner of the premises is in law deemed to have invited the other thereon for such common purpose and such invitation includes all employees of the person invited, the services of whom are necessary, convenient or proper in the accomplishment of such purpose, and in such case it becomes the duty of the invitor to use reasonable care in keeping in a reasonably safe and secure condition

all parts of his premises where the person invited and his servants may find it necessary or convenient to be or to work in the accomplishment of such purposes.''

And under this rule, which is well sustained by authority, appellant had a positive duty to perform, which could only be discharged by putting and keeping that portion of its premises which respondent and its servants were expected to use in a reasonably safe condition for such use. *Brezee v. Powers,* 80 Mich. 172, 45 N. W. 130; *Ryerson v. Bathgate,* 67 N. J. L. 337, 51 Atl. 708, 57 L. R. A. 307; Cooley, Torts, 718.

Notwithstanding this duty, which made appellant primarily liable as between the parties hereto, still, if respondent, by some independent act of negligence on its part, caused or contributed to the accident, it would thereby become a joint tort-feasor and could not recover. In *Alaska Steamship Co. v. Pacific Coast Gypsum Co.,* 71 Wash. 359, 128 Pac. 654, and 78 Wash. 247, 138 Pac. 875, it was held, in effect, that if the employer (situated as is the respondent here) had knowledge, or should have had knowledge, of the defective and dangerous condition of the appliance and knowingly acquiesced in its use, he could not recover against the person who would have been primarily liable had not such knowledge existed; and that the existence of such knowledge, or the want of it, was a fact to be decided as other facts in the case; and unless the evidence was so conclusive thereon as to lead the minds of all reasonable men to the same conclusion, it could not be decided by the court as a matter of law, but should be left to the determination of the jury. The case of *Puyallup v. Vergowe,* 95 Wash. 320, 163 Pac. 779, is not out of harmony with this decision, for there it was held that the city, which sought to recover over against a contractor, had been held in the original action to be guilty of an independent act of negligence

which made it a joint tort-feasor. In *Seattle v. Great Northern R. Co.*, 103 Wash. 294, 174 Pac. 4, it was held that, if the city contributed to the injury by the construction of a defective sidewalk, or by permitting the defect to exist for an unreasonable length of time without repairs, it could not recover over from one who caused a settling of the ground on which the sidewalk was constructed, because by its own negligence it had become a joint tort-feasor; and it appearing that the lower court as the trier of the facts had so found, the judgment was affirmed.

In *Alaska Steamship Co. v. Pacific Coast Gypsum Co., supra,* it appeared that the Gypsum Company had complete charge and control of the appliance, excepting only that the Steamship Company's employees filled the buckets and placed them upon the hook of the hoist; while here the plank approach was at least as much under respondent's control during the loading operations as it was under the control of appellant; and there was abundant evidence in the case from which the jury might have found that it was customary and usual for this or any other dolphin to sway to a considerable extent with the surging of the ship, which was tied to it; and that such swaying and its probable effect upon the plank approach to the dolphin were well known to respondent and were such that its failure to inspect was an independent act of negligence upon its part which caused or contributed to the injury. The nature of this appliance and the manner of its use might to the jury seem very different from that of some fixed or stationary part of appellant's plant which an experienced and careful person might, under the circumstances, assume to be safe without actual or careful inspection. By the refusal of appellant's proposed instructions, heretofore referred to, the jury was left without any guide or direc-

tion upon the question of whether or not the respondent had, by some independent act of its own, become a joint tort-feasor, and was left to determine the case solely upon the question of whether or not appellant had furnished the plank approach as part of its plant. This, we think, was error.

In view of the necessity of a new trial, we may say for the guidance of the trial court that we have examined into the error assigned upon instructions as to the force and effect of the judgment in the Egan case; and in view of the fact that appellant sought that dismissal voluntarily upon its own motion after the plaintiff's case had been presented to the jury, and after knowledge obtained from the pleadings of the fact that its codefendant claimed that it was responsible for the construction and maintenance of the plank approach, and notwithstanding the failure to at any time tender to it the defense of the action on behalf of the respondent, still the judgment was binding upon it in the four particulars named, *i. e.,* it was proof that the plank approach was insecurely fastened, unsafe and dangerous; that respondent was liable to Egan for the injuries received; that Egan was not guilty of contributory negligence, had not assumed the risk, and that no negligence of a fellow servant had intervened; and that Egan's damages were as shown by that judgment. *City of Detroit v. Grant,* 135 Mich. 626, 98 N. W. 405; *Chicago v. Robbins,* 2 Black (67 U. S.) 418; *Robbins v. Chicago,* 4 Wall. (71 U. S.) 657; *Oceanic Steam Nav. Co. v. Campania Transatlantica Espanola,* 144 N. Y. 663, 39 N. E. 360; *Spokane v. Crane Co.,* 98 Wash. 49, 167 Pac. 63; *Bevan v. Muir,* 53 Wash. 54, 101 Pac. 485, 32 L. R. A. (N. S.) 588.

The other assignments of error are sufficiently disposed of by what has been said, or relate to matters which are not likely to recur upon another trial.

Judgment reversed, and remanded with instructions to grant appellant's motion for a new trial.

MAIN, MITCHELL, and MACKINTOSH, JJ., concur.

### ON REHEARING.

[*En Banc.*  November 19, 1919.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment is reversed.